ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| CORDEX CONSTRUCTION CORP.<br>PETICIONARIO<br><br>v.<br><br>GROSSMAN PROPERTIES LLC, IZQ CONSTRUCTION LLC, UNITED SURETY & INDEMNITY CO.<br>RECURRIDOS | TA2026CE00053 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV06842<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

Lotti Rodríguez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparece Cordex Construction Corp. (en adelante, Cordex o parte peticionaria) mediante una *Petición de Certiorari* y nos solicita que revisemos la Resolución del Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario) emitida el 25 de noviembre de 2025, y notificada al día siguiente, mediante la cual se denegó la solicitud de descalificación de los abogados de Grossman Properties LLC e IZQ Construction LLC (en adelante, Grossman, IZQ y en conjunto recurridos) presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega el recurso de *certiorari* presentado.

**I.**

El 30 de julio de 2025 Cordex Construction Corp. instó una *Demanda[1]* de cobro de dinero en contra de Grossman e IZQ, en la que alegó que los recurridos le debían la suma de $235,944.44 por concepto trabajos realizados

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.

y no pagados en el proyecto de construcción sito en el desarrollo conocido como Bahía Beach, Atlantic Drive B-17, en Río Grande, Puerto Rico, propiedad de Grossman. Solicitó además el pago de las costas y gastos del proceso. Posteriormente, el 29 de agosto de 2025 la parte peticionaria presentó una *Demanda Enmendada*[2] a los fines de incluir como parte a United Surety & Indemnity Co.

El 16 de septiembre de 2025, el Lcdo. Luis V. Almeida Oliveri compareció solicitando asumir representación legal de IZQ[3] y, al día siguiente, compareció el Lcdo. Juan M. Acevedo Ramírez en solicitud de asumir representación legal de Grossman[4]. Ambas solicitudes fueron aceptadas por el TPI.[5]

Posteriormente, la parte peticionaria presentó una *Solicitud de descalificación*[6] en la que alegó que la representación legal tanto de Grossman, dueño del proyecto de construcción, como de IZQ, contratista de Grossman en el proyecto, estaba siendo asumida por un socio y un asociado del mismo bufete del que el señor Marc Grossman, organizador, socio y persona autorizada de Grossman, era "*Senior Partner*", y que ello era incompatible con el deber de lealtad, al existir un conflicto estructural derivado de la causa de acción llevada al amparo del Artículo 1374 del Código Civil de Puerto Rico, 31 LPRA sec. 10271.

Añadió que esta situación se agravaba porque el señor Marc Grossman no solo era "*Senior Partner*" del bufete *Milberg Coleman Bryson Phillips Grossman*, con interés económico directo en dicho bufete, sino que también era organizador, socio y representante autorizado de Grossman, quien figura como parte en este pleito y es dueña del proyecto de construcción en controversia. Según adujo la parte peticionaria, el señor Marc Grossman

---

[2] Entrada Núm. 7 del SUMAC del TPI.
[3] Entrada Núm. 13 del SUMAC del TPI.
[4] Entrada Núm. 14 del SUMAC del TPI.
[5] Entrada Núm. 15 del SUMAC del TPI.
[6] Entrada Núm. 16 del SUMAC del TPI.

ejerce simultáneamente control sobre la corporación Grossman y sobre el bufete que representa a IZQ, con intereses opuestos. Señaló, además, que tal conducta dejaba en manifiesto la impropiedad de una representación simultánea por abogados de un mismo bufete y confirmaba la existencia de un conflicto insuperable contrario al deber de lealtad que impone el Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21. Ante ello, requirió que se descalificaran al Lcdo. Luis V. Almeida Olivieri y al Lcdo. Juan M. Acevedo Ramírez, así como el bufete *Milberg Coleman Bryson Phillips Grossman.*

En respuesta, el 14 de octubre de 2025 IZQ y Grossman presentaron sus respectivas oposiciones.[7] En su escrito, IZQ sostiene que, en este caso, quien promueve la descalificación no es cliente actual ni pasado del abogado cuya descalificación solicita y, por tanto, carece de legitimación activa para instarla. Añade, que la parte peticionaria no alega confidencias compartidas ni perjuicio alguno que afecte su posición procesal, no plantea un conflicto ético real y se apoya únicamente en una interpretación errónea del Artículo 1374 del Código Civil, *supra.*

Por su parte, Grossman, además de alegar ausencia de legitimación activa de Cordex para solicitar la descalificación de los abogados, menciona que nada de lo expresado por el peticionario en su solicitud demostraba la existencia de una representación sucesiva o simultánea en la que Cordex es o fuera parte y tampoco había alegado como la representación legal de IZQ y Grossman le causaba daño, perjuicio o desventaja indebida en el caso.

La parte peticionaria presentó una réplica a los escritos de los recurridos el 16 de octubre de 2025, en la cual alegó que, contrario a lo planteado por los recurridos, Cordex sí tenía legitimación activa para solicitar la descalificación toda vez que tenían un interés legítimo en la pureza del

---

[7] Entradas Núm. 24 y 25, respectivamente, del SUMAC del TPI.

proceso.[8] Además, reiteró los planteamientos relacionados al conflicto estructural entre el dueño de la obra y el contratista, que habían sido señalados en la moción original. Los recurridos presentaron sus respectivas dúplicas, IZQ el 17 de octubre de 2025 y Grossman el 24 de octubre de 2025, donde, esencialmente, reiteraron los planteamientos de sus escritos anteriores.[9]

Atendidos los escritos de las partes, el 25 de noviembre de 2025 el TPI emitió una *Resolución*[10] en la que declaró No Ha Lugar la *Solicitud de descalificación* instada por Cordex. En la referida determinación, el TPI concluyó que la parte peticionaria no demostró qué perjuicio o desventaja le causaba el hecho de que IZQ y Grossman tuviesen abogados del mismo bufete y tampoco demostró de qué manera la participación del señor Marc Grossman, en la corporación Grossman y en el bufete, le afectaba sus derechos o le causaban un daño en el ejercicio de su causa de acción. Añadió que el alegado conflicto estructural que planteaba el peticionario era hipotético y especulativo y que, en todo caso, correspondía a IZQ y Grossman evaluar si sus derechos se veían lacerados de alguna forma o si se materializaba algún conflicto de interés por defensas encontradas o revelaciones de confidencias ante el hecho de que sus respectivas representaciones legales pertenezcan al mismo bufete.

Inconforme, el 30 de noviembre de 2025, Cordex presentó una *Solicitud de Reconsideración*[11] en la que alegó que el perjuicio sufrido consistía en que el mismo bufete que responde ante el dueño del proyecto controla la configuración de la cuenta entre dueño y contratista, y que existe un riesgo real de que la liquidación se maneje de forma que reduzca el saldo adeudado a IZQ y, por esa vía, disminuya o elimine la suma disponible para Cordex bajo

---

[8] Entrada Núm. 26 del SUMAC del TPI.
[9] Entradas Núm. 28 y 30 del SUMAC del TPI.
[10] Entrada Núm. 31 del SUMAC del TPI.
[11] Entrada Núm. 33 del SUMAC del TPI.

el Artículo 1374, sin que el peticionario pudiera intervenir en la relación interna dueño-contratista.

El 15 de diciembre de 2025, el foro primario notificó una *Resolución*[12], emitida el 12 de diciembre de 2025, mediante la cual declaró No Ha Lugar a la reconsideración.

En desacuerdo, el 13 de enero de 2026 Cordex presentó el recurso de epígrafe en el que plantea el siguiente y único error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE DESCALIFICACIÓN DE LOS ABOGADOS DEL BUFETE DONDE EL SR. MARC GROSSMAN NO SOLO FUNGE COMO SENIOR PARTNER DEL MISMO, SINO QUE TAMBIÉN ES EL DUEÑO DEL PROYECTO; Y ESE MISMO BUFETE, EN CLARO CONFLICTO DE INTERÉS Y EN PERJUICIO DE LOS INTERESES DE CORDEX COMO SUBCONTRATISTA, REPRESENTA DE FORMA SIMULTÁNEA INTERESES JURÍDICAMENTE ADVERSOS AL COMPARECER EN DEFENSA DE GROSSMAN PROPERTIES, COMO DUEÑO DEL PROYECTO, Y DE IZQ, COMO CONTRATISTA GENERAL.**

El 29 de enero de 2026 IZQ presentó su *Oposición al auto de certiorari* y el 30 de enero de 2026 Grossman presentó su *Oposición a solicitud de certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus

---

[12] Entrada Núm. 34 del SUMAC del TPI.

méritos". *BPPR v. SLG Gómez-López, supra,* pág. 337; *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209; *IG Builders et. al. v. BBVAPR,* 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo,* 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia,* 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo,* supra, pág. 372 (citando a *Negrón v. Srio. De Justicia, supra; Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016)).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank de Puerto Rico v. Zaf Corporation,* 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra,* dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los

asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

De otra parte, como norma general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000), citando a *Lluch v. España Service*

*Sta.,* 117 DPR 729, 745 (1986). En ese sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que esta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

### B. La descalificación del abogado

En el manejo de los casos que se ventilan ante sí, los jueces tienen la potestad de descalificar a un abogado o una abogada si ello resulta necesario para lograr la solución justa, rápida y económica de los pleitos. *ORIL v. El Farmer, Inc.*, 204 DPR 229, 241 (2020); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 661 (2000). A esos efectos, la Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.3, establece lo siguiente sobre la conducta de los abogados:

> El Tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte, imponer sanciones económicas o de otra naturaleza, o descalificar a un abogado o abogada que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as).

El Tribunal Supremo de Puerto Rico ha expresado que la descalificación de un abogado no constituye de por sí una acción disciplinaria contra los abogados, sino que se trata de una medida preventiva para evitar posibles infracciones a los cánones del Código de Ética Profesional. *ORIL v. El Farmer, Inc., supra*; *Meléndez v. Caribbean Int'l. News, supra*, pág. 660; *K-Mart Corp. v. Walgreens of PR, Inc.*, 121 DPR 633, 637-638 (1988). Además de prevenir una violación a cualquiera de los cánones del Código de Ética Profesional, la descalificación también podría ordenarse para evitar actos disruptivos de los abogados y las abogadas durante el trámite de un pleito. *ORIL v. El Farmer, Inc., supra*; *Meléndez v. Caribbean Int'l. News, supra*, pág. 661. Por consiguiente, los tribunales, "en el ejercicio de su poder inherente de supervisar y controlar la conducta de los abogados y las abogadas que

postulan en sus salas, pueden atender las mociones de descalificación cuando estas surgen como cuestiones colaterales en los casos pendientes ante sí." *ORIL v. El Farmer, Inc., supra*; *K-Mart Corp. v. Walgreens of PR, Inc., supra*, págs. 637-638.

Como dispone la Regla 9.3 de Procedimiento Civil, *supra,* la descalificación puede ordenarse *motu proprio* por el tribunal o a solicitud de parte. En los casos en que la descalificación la solicita la parte adversa, "la mera presentación de la moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión". *ORIL v. El Farmer, Inc., supra*; *Job Connection Center v. Sups. Econo,* 185 DPR 585, 597 (2012). En tales circunstancias, el tribunal deberá hacer un análisis de la totalidad de las circunstancias tomando en consideración los siguientes factores:

> (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. *ORIL v. El Farmer, Inc., supra,* págs. 242-243; *Job Connection Center v. Sups. Econo, supra,* págs. 597-598.

El requisito de que el promovente debe tener legitimación activa para solicitar la descalificación de un abogado queda satisfecho cuando este demuestra que la representación en controversia le causa un perjuicio o una desventaja indebida en el caso. *Liquilux Gas Corp. v. Berríos, Zaragoza,* 138 DPR 850, 864 (1995); R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 6ta ed., Puerto Rico, LexisNexis, 2017, pág. 83. El juez o jueza que atiende la moción deberá analizar el perjuicio o la desventaja indebida que le causa la continua representación del abogado de la cual la parte adversa solicita la descalificación. *ORIL v. El Farmer, Inc., supra,* pág. 243. Además, deberá sopesar el derecho que le asiste todo ciudadano de escoger su representación legal. *Id.*

Por lo anterior, el Tribunal Supremo ha resuelto que la descalificación de un abogado o una abogada no debe imponerse ligeramente y que solo procederá cuando sea estrictamente necesaria, pues se considera "un remedio drástico que se debe evitar si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes." *Id.*, pág. 244. Asimismo, nuestro Alto Foro ha sido enfático en que los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación, siempre y cuando se demuestre que el foro de instancia abusó crasamente de su discreción, actuó con perjuicio o parcialidad, se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitaría un perjuicio sustancial. *ORIL v. El Farmer, Inc.*, *supra*, pág. 244.

### C. Canon 21 del Código de Ética Profesional

En el contexto de la controversia que nos ocupa, es importante destacar el deber de lealtad que todo abogado le debe a sus clientes consagrado en el Canon 21 del Código de Ética Profesional de Puerto Rico de 1970, 4 LPRA Ap. IX, C. 21. En lo pertinente, el Canon 21 dispone lo siguiente:

> [...]
>
> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> [...] Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.
>
> Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad. *Id.*

Al amparo del citado Canon, constituye una norma reiterada que los miembros de la profesión legal deben abstenerse de incurrir en determinadas conductas que configuran conflictos de intereses. *In re Raffucci Caro*, 206 DPR 589, 609 (2021). Entre estas se encuentran: (a) aceptar la representación de un cliente en asuntos que puedan afectar adversamente los intereses de un cliente previo, conocida como representación sucesiva adversa; (b) aceptar la representación simultánea de dos (2) clientes con intereses encontrados, situación conocida como representación simultánea adversa, y (c) aceptar la representación legal conociendo que su juicio profesional puede verse afectado por sus intereses personales. *Id.*

En cuanto a la representación simultánea adversa, su prohibición persigue evitar que un abogado, en beneficio de un cliente, "abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones actuales con otro cliente, puesto que abogaría así por causas contrarias." *In re Pietri Torres*, 201 DPR 583, 595 (2018).

Ahora bien, es preciso destacar que "que nada existe en el referido Canon 21 que vede la representación sucesiva o simultánea de dos clientes por su abogado ante la total ausencia de un posible conflicto de intereses entre ambas representaciones". *Otaño v. Vélez*, 141 DPR 820, 827 (1996).

**III.**

Luego de examinado el recurso ante nuestra consideración a la luz del derecho aplicable y los criterios que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, no hemos encontrado fundamento legal alguno que amerite la expedición del auto de *certiorari*. La parte peticionaria no demostró que la representación legal de IZQ y Grossman por abogados del mismo bufete le causara un perjuicio real o una desventaja indebida que le confiriera legitimación activa para solicitar la descalificación. Sus planteamientos descansan en un alegado conflicto estructural hipotético, sin

que se acreditara la existencia de un conflicto de intereses real, aparente o potencial conforme al Canon 21 del Código de Ética Profesional, *supra.*

Asimismo, no surge del récord que el TPI haya incurrido en prejuicio, parcialidad, craso abuso de discreción o error manifiesto al denegar la solicitud de descalificación ni la reconsideración presentada. La determinación recurrida está razonablemente fundamentada en los hechos y en el derecho aplicable y se emitió dentro del ámbito de la discreción que le asiste al foro primario.

En estas circunstancias, nos abstenemos de intervenir con la determinación recurrida y *denegamos* la expedición del recurso incoado.

**IV.**

Por los fundamentos antes expuestos, se *deniega* la expedición del auto de *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Grana Martínez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones